IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CAPITAL ONE EQUIPMENT FINANCE CORP. f/k/a ALL POINTS CAPITAL CORP, d/b/a CAPITAL ONE TAXI MEDALLION FINANCE, | ) ) ) ) ) | |
| | ) | Case No. 17-cv-0304 |
| Plaintiff, | ) ) | Hon. Amy J. St. Eve |
| v. | ) ) | |
| ADELA INC., ADRIAN TUDOR, FLORINA TUDOR, *et al.*, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff Capital One Equipment Finance has moved for a summary judgment finding that the Defendants Adela Inc., Adrian Tudor, Florina Tudor, and the additional Defendant entities described below, collectively, "Defendants," are in default and are jointly and severally liable to Plaintiff. (R. 62, Mot. for Summ. J.) For the following reasons, the Court grants Plaintiff's motion for summary judgment.

**BACKGROUND**

**I.      The Parties**

Plaintiff Capital One Equipment Finance Corp. ("Plaintiff" or "Capital One") is incorporated in the State of New York with its principal place of business in New York. (R. 65, Pl.'s Statement of Facts ¶ 1.) Defendants Adela Inc., New Pisces Inc., P.T. Cab Co., Sagittarius 1 Inc., Terra Taxi Three Corp., Rex 1 Inc., Rex 2 Inc., Rex 3 Inc., Rex 6 Inc., Rex 10 Inc., Nect 3 Inc., Nect 5 Inc., Nect 10 LLC, Nect 11 LLC, Nect 12 LLC, Nect 13 LLC, Nect 14 LLC, Nect 15

1

LLC, Nect 16 LLC, Nect 17 LLC, Nect 18 LLC, Nect 19 LLC, Nect 20 LLC, Nect 21 LLC, Nect 22 LLC, Nect 23 LLC, Nect 24 LLC, Nect 25 LLC, Nect 26 LLC, Nect 27 LLC, Nect 28 LLC, and Nect 29 LLC (collectively, "Borrower Defendants") are Illinois limited liability companies and corporations with their principal place of business in Illinois. (*Id.* ¶¶ 2-3.) Adriana and Florina Tudor, both of whom are Illinois citizens, are the sole members of each of the Nect LLCs. (*Id.* ¶¶ 4, 6-7.) Defendant Medallion Leasing ("Medallion") is an Illinois corporation with its principal place of business in Illinois. (*Id.* ¶ 5.) Adrian Tudor, Florina Tudor, and Medallion, as well as Nect 10 LLC, Nect 11 LLC, Nect 12 LLC, Nect 13 LLC, Nect 14 LLC, Nect 15 LLC, Nect 16 LLC, Nect 17 LLC, Nect 18 LLC, Nect 19 LLC, Nect 20 LLC, Nect 21 LLC, Nect 22 LLC, Nect 23 LLC, Nect 24 LLC, Nect 25 LLC, Nect 26 LLC, Nect 27 LLC, Nect 28 LLC, and Nect 29 LLC, are collectively the "Guarantor Defendants."

## II. The Loans, Master Joint Participation Agreements, and the Assignment of the Loans

Plaintiff seeks to recover the aggregate principal, as well as costs, attorneys' fees, and interest, with respect to 32 mature and unpaid loans the Borrower Defendants received from Transit Funding Associates 4, LLC ("Transit Funding") and Tri-Global Financial Services, Inc. ("Tri-Global") (collectively, the "Original Lenders"). (*Id.* ¶¶ 11-12, 15.) Borrower Defendants executed and delivered a single Promissory Note ("Note") for each of the loans. (*Id.* ¶ 13.) With respect to each loan, one or more of the Guarantor Defendants, and with regard to certain loans, one or more of the Borrower Defendants, executed and delivered a payment Guaranty ("Guaranty," collectively, the "Guaranties"). (*Id.* ¶ 14.)

Plaintiff and the Tri-Global are parties to a Master Joint Participation Agreement ("Tri-Global MJPA") dated August 2, 2010, and Plaintiff and Transit Funding are parties to a Master

Joint Participation Agreement ("Transit Funding MJPA") dated March 29, 2012. (*Id.* ¶¶ 16-17.)[1]
The MJPAs give Plaintiff the right to revoke servicing from the Original Lenders and to enforce the loans directly against the respective borrowers, guarantors, and obligors. (*Id.* ¶ 18.) Pursuant to the MJPAs, the Original Lenders also were required to deliver to Plaintiff, among other documents, the original note executed in connection with the loan, an allonge[2] indorsing the note to Plaintiff, and a present assignment of the loan, guarantees, and other documents the borrowers and guarantors executed in connection with each loan. (*Id.* ¶ 19.) The Original Lenders also authorized Plaintiff to take certain actions in connection with each loan, including the right to indorse any notes or instruments given in connection with the loans on behalf of the Original Lender. (*Id.* ¶ 20.) Through two letters, dated November 30, 2016 and April 7, 2016, Plaintiff exercised its rights pursuant to the MJPAs to terminate the Original Lenders' rights to enforce the loans and to succeed to their rights to enforce the loans. (*Id.* ¶¶ 21-22.) Additionally, at the closing of each loan, the Original Lenders executed an assignment and transfer agreement ("Assignment and Transfer Agreements"), which assigned and transferred all their rights in the loan to Plaintiff.[3] (*Id.* ¶ 23.) Plaintiff also took possession of the Notes in connection with each loan at or shortly after closing and the Original Lenders authorized Plaintiff to indorse the Notes, but all payments Defendants made on the loans were to the Original Lenders. (*Id.* 24; R. 84, Defs. Resp. to Pl.'s Statement of Facts ¶ 24.)

---

[1] Defendants argue that certain exhibits and attachments to the MJPAs are not included in the MJPA versions that Plaintiff attached to its Statement of Facts, however, Defendants do not present any evidence that those attachments would impact the validity of the MJPAs.

[2] An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." *Olive Portfolio Alpha, LLC v. 116 W. Hubbard St., LLC*, 2017 IL App (1st) 160357, 75 N.E.3d 381, 385 (citing Black's Law Dictionary (10th ed. 2014).

[3] Defendants note that the Tri-Global Assignment and Transfer Agreements was executed in blank and do not include the name of any borrower or loans. (Defs. Resp. to Pl.'s Statement of Facts ¶ 23.)

**III.    The Tri-Global Loans, Notes, and Guarantees**

On or about September 6, 2013, Tri-Global made loans (the "Tri-Global Loans") in varying amounts to Adela, New Pisces, P.T. Cab, Rex 1, Rex 2, Rex 3, Rex 6, Rex 10, Saggitarius 1, Terra Taxi Three, Nect 3, and Nect 5 (collectively, the "Tri-Global Borrower Defendants"). (Pl.'s Statement of Facts ¶ 26.) Each of the Tri-Global Loans was evidenced by a Promissory Note (the "Tri-Global Notes") Adrian Tudor executed as president of each Tri-Global Borrower Defendant. (*Id.* ¶ 27.)

Defendant Adrian Tudor had principal responsibility for the execution of the loans at issue in this lawsuit and was continuously involved in the operation of the taxi medallions that secure the loans. (R. 85, Defs.' Statement of Additional Facts ¶¶ 1-2.) Tudor was directly involved in the payment of the loans, and he negotiated the loans personally with Tri-Global's employee, Roman Sapino. (*Id.* ¶¶ 3, 5.) Tudor spoke to Sapino in the fall of 2016 and told him he was having trouble making the loan payments due to market conditions, and Sapino told him to do his best to make payments when possible. (*Id.* ¶¶ 6-7.) Tudor, however, continued to make payments in the fall of 2016. (*Id.* ¶ 8.)

Each of the Tri-Global Loans has a "Maturity Date" of November 1, 2016 and each of the Loans states that on the Maturity Date "there shall be a balloon payment of the unpaid principal balance of the note, plus any accrued interested thereon." (Pl.'s Statement of Facts ¶¶ 29-30.) Prior to initiating this action, Plaintiff indorsed the Tri-Global Notes to Plaintiff by executing an allonge ("Tri-Global Allonge") in accordance with the Assignment and Transfer Agreements executed and delivered by Tri-Global in connection with the Tri-Global Loans. (*Id.* ¶ 31.) The Tri-Global Allonges have been firmly affixed to the Tri-Global Notes, and Plaintiff is in possession and is the holder of the Tri-Global Notes. (*Id.* ¶¶ 32-33.)

The Tri-Global Notes provide "all persons liable . . . on this Note, agree, jointly and severally, to pay all costs of collection, including reasonable attorneys' fees and disbursements, in case the unpaid principal balance of this Note, or any payment of principal and/or interest thereon, is not paid when due." (*Id.* ¶ 34.) Illinois law govern the Tri-Global Notes. (*Id.* ¶ 35.) Contemporaneously with the execution of the Tri-Global Notes, Adrian Tudor and Florina Tudor, each individually, executed a Loan Guaranty (the "Tri-Global Guaranties") for the Tri-Global Loans to the Tri-Global Borrower Defendants. (*Id.* ¶ 36.) In addition, contemporaneously with the execution of the Tri-Global Notes, Adrian Tudor executed an additional Loan Guaranty ("Medallion Guaranties") on behalf of Medallion Leasing for the Tri-Global Loans to the Tri-Global Borrower Defendants. (*Id.* ¶ 37.) The Tri-Global and Medallion Guaranties all provide that Medallion and the Tudors as primary obligors and not merely as a surety "unconditionally guarantee[] to the Lender payment when due,. . . of any and all liabilities of the Borrower to the Lender, together with all interest thereon and all attorneys' fees, costs and expenses of collection incurred by the Lender in enforcing any of such liabilities." (*Id.* ¶¶ 38-39.)

The Guaranties also further provide the following:

- "[n]o invalidity, irregularity, or unenforceability of all or any part of the liabilities hereby guaranteed or of any security therefor [sic] or any other circumstance that might otherwise constitute a legal or equitable defense of a guarantor shall affect, impair, or be a defense to this guaranty . . ."

- they are given "in consideration of financial accommodations given or to be given or continued" to the Tri-Global Borrower Defendants."

- "[n]o delay on the part of the Lender in exercising any of its options . . . shall constitute a waiver thereof. No waiver of any rights . . . shall be deemed to be made by the Lender unless the same shall be in writing, duly signed on behalf of the Lender."

- Illinois law governs them.

- "the Lender shall have the right, at any time . . . and without notice, to sell, assign, transfer, or otherwise dispose of all or any part of its rights under this guaranty. In such event, each and every immediate and successive purchaser, assignee, transferee, or holder . . . shall have the right to enforce this guaranty by legal action or otherwise, for its own benefit as fully as if such purchaser, transferee or holder were by name specifically given such right."

(*Id.* ¶¶ 40-44.) The Tri-Global Note, the Tri-Global Guaranties, the Medallion Guaranties, and each of the other documents executed in connection with the Tri-Global Loans (collectively, the "Tri-Global Loan Documents") were assigned and transferred to Plaintiff. Defendants note that the Tri-Global Assignment and Transfer Agreement were executed in blank and did not include the name of any borrower or loans, and thus deny that they were effectively assigned. (*Id.* ¶ 45; Defs. Resp. to Pl.'s Statement of Facts ¶ 45.)

The Tri-Global Loans matured on November 1, 2016, on which date the Tri-Global Borrower Defendants were required to make the aforementioned "balloon payment." (*Id.* ¶ 46.) Each of the Tri-Global Borrower Defendants failed to make the balloon payment the Tri-Global notes required. (*Id.* ¶47.) Plaintiff provided notice of default to the Tri-Global Borrower Defendants, the Tudors, and Medallion on December 19, 2016. (*Id.* ¶ 48.) The Tri-Global Borrower Defendants, the Tudors, and Medallion have not paid the amounts under the terms of the loans in full, and thus, the loans are in default. (*Id.* ¶¶ 49-50.)

### IV. The Transit Funding Loans, Notes, and Guaranties

On or about November 16, 2012, Transit Funding made loans (the "Transit Funding Loans"), each in the amount of $780,000, to Nect 10, Nect 11, Nect 12, Nect 13, Nect 14, Nect 15, Nect 16, Nect 17, Nect 18, Nect 19, Nect 20, Nect 21, Nect 22, Nect 23, Nect 24, Nect 25, Nect 26, Nect 27, Nect 28, and Nect 29 (collectively, the "Transit Funding Borrower Defendants"). (*Id.* ¶¶ 51-52.) Each of the Transit Funding loans was evidenced by a Promissory

6

Note (the "Transit Funding Notes") Adrian and Florina Tudor executed as members and managers of the Transit Funding Borrower Defendants in the original principal amount of $780,000. (*Id.* ¶ 53.) Each of the Transit Funding Loans states that there will be a balloon payment on December 1, 2015 of the unpaid principal balance of the note, plus any accrued interest thereon." (*Id.* ¶ 54.) The Transit Funding Notes also require the Transit Funding Borrower Defendants to pay reasonable legal fees and costs in connection with the collection of the Notes. (*Id.* ¶ 55.) Illinois law governs the Transit Funding Notes. (*Id.* ¶ 56.)

Adrian Tudor negotiated the Transit Funding loans personally with employees of Transit Funding, including Michael Rosenstein and John Moberg. (Defs.' Statement of Additional Facts ¶ 9.) Tudor attempted to negotiate a modification of the loans in early 2015, but he was not able to modify the loans. (*Id.* ¶ 10.) Tudor made all payments to Tri-Global and was not aware that Plaintiff was involved in the loans or of the MJPA. (*Id.* ¶ 11-12.)

On April 20, 2016, Transit Funding executed a series of allonges (the "Transit Funding Allonges") indorsing the Transit Funding Notes to Plaintiff and assigning all of Transit Funding's rights, titles, and interests in the Notes to Plaintiff. (Pl.'s Statement of Facts ¶ 57.) The Transit Funding Allonges were firmly affixed to the Transit Funding Notes and Plaintiff is in possession and is the holder of the Notes. (*Id.* ¶¶ 58-59.) Each of the Transit Funding Borrower Defendants entered into a Loan Agreement in connection with the Transit Funding Loans (the "Transit Funding Loan Agreements"), which state that they may not be altered, except by a written instrument executed by both parties. (*Id.* ¶¶ 60-61.)

Contemporaneously with the execution of the Transit Funding Notes, Adrian Tudor and Florina Tudor, each individually, and each of the Transit Funding Defendants that is not a borrower under that loan, executed a Loan Guaranty (the "Transit Funding Guaranties") for the

7

Transit Funding Loans. (*Id.* ¶ 62.) The Transit Funding Guaranties, which Illinois law governs, all provide:

- the "Lender is willing to make the Loan to the Borrower only if the [Transit Funding Guaranties] execute and deliver this guaranty and guarantees payment to the Lender of the Debt" and that they were given in "good and valuable consideration, the receipt and legal sufficient of which are hereby acknowledged."

- the Transit Funding Guarantors "guarantee, absolutely, irrevocably and unconditionally, to Lender the payment of the Debt," and the term Debt is defined as all liabilities of the Borrower "to Lender of whatever nature . . . whether created directly or acquired by Lender, by assignment or otherwise, whether matured or unmatured and whether absolute or contingent."

- they can only be modified by an agreement in writing signed by the Lender and the undersigned.

- the Guarantors "agree that the [Guarantors] shall indemnify and hold Lender harmless and defend Lender at the [Guarantors'] sole cost and expense against any loss or liability, cost or expense . . ., and all claims, actions, procedures and suits arising out of or in connection with . . . any and all lawful action that may be taken by Lender in connection with the enforcement of the provisions of this Guaranty."

- the Guarantors "waive any and all right to assert or interpose any defense . . . setoff, counterclaim, or cross-claim of any nature whatsoever with respect to this Guaranty or the obligations of the [Guarantors] under this Guaranty . . . in any action or proceeding brought by Lender to collect the Debt . . . or to enforce the obligations of the [Guarantors] under this Guaranty."

- the Tudors and the Transit Funding Borrower Defendants waived "all other notices to which the undersigned might otherwise be entitled."

- each "reference herein to Lender shall be deemed to include its successors and assigns, in whose favor the provisions of the Guaranty shall also inure."

(*Id.* ¶¶ 63-71.)

The Transit Funding Notes, the Transit Funding Loan Agreements, the Transit Funding Guaranties, and each of the other documents and instruments executed in connection with the Transit Funding Loans were assigned and transferred to Plaintiff prior to the date of this action. (*Id.* ¶ 72.) Defendants note that the MJPA does not include certain attachments and thus deny

8

that Transit Funding effectively assigned the Loans. (Defs.' Resp. to Pl.'s Statement of Facts ¶ 72.) The Transit Funding Loans matured on December 1, 2015, on which date each of the Transit Funding Borrower Defendants were required to make a "balloon Payment" of the "unpaid principal balance" of the Transit Funding Notes, "plus any accrued interest thereon." (Pl.'s Statement of Facts ¶ 73.) Each of the Transit Funding Borrower Defendants failed to make this balloon payment on December 1, 2015, and Plaintiff provided notice of this default to each of the Transit Funding Borrowers and Guarantors on December 19, 2016. (*Id.* ¶¶ 74-75.) None of the Transit Funding Borrower Defendants or Guarantors have paid the amounts due under the Transit Funding Loans in full, and thus, the loans are in default. (*Id.* ¶ 76-77.)

## LEGAL STANDARDS

I.  **Federal Rule of Civil Procedure 56**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Blasius v. Angel Auto., Inc.*, 839 F.3d 639, 644 (7th Cir. 2016) (citing *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016)); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986); *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000) ("The existence of a mere scintilla of evidence supporting a plaintiff's position is insufficient; there must be evidence on which a jury could reasonably find for the plaintiff."). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the

light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255.

The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that it is entitled to judgment as a matter of law. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013); *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010). If the moving party demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). A genuine issue of material fact exists only if there is evidence sufficient "to permit a jury to return a verdict for" the non-moving party. *Egonmwan v. Cook County Sheriff's Dep't*, 602 F.3d 845, 849 (7th Cir. 2010).

## II.   Northern District of Illinois Local Rule 56.1

Northern District of Illinois Local Rule 56.1 governs how the parties identify material facts and potential disputed material facts. "The purpose of Rule 56.1 is to have the litigants present to the district court a clear, concise list of material facts that are central to the summary judgment determination. It is the litigants' duty to clearly identify material facts in dispute and provide the admissible evidence that tends to prove or disprove the proffered fact." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015). Local Rule 56.1(a) "requires the party moving for summary judgment to file and serve a 'statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law.'" *Id.* at 218 (citation omitted). "The non-moving party must file a

10

response to the moving party's statement, and, in the case of any disagreement, cite 'specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Petty v. Chicago,* 754 F.3d 415, 420 (7th Cir. 2014) (citation omitted); *see also* L.R. 56.1(b)(3)(A). Local Rule 56.1(b)(3)(C) requires the non-moving party to file a separate statement of additional facts. *See Thornton v. M7 Aerospace LP*, 796 F.3d 757, 769 (7th Cir. 2015).

Local Rule 56.1 statements and responses should identify the relevant admissible evidence supporting the material facts – not make factual or legal arguments. *See Zimmerman v. Doran,* 807 F.3d 178, 180 (7th Cir. 2015). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Curtis*, 807 F.3d at 218 (quoting *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009)). The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere,* 791 F.3d 764, 767 (7th Cir. 2015).

## ANALYSIS

Plaintiff argues that that both the Borrower Defendants and the Guarantor Defendants are liable to Plaintiff for the full amount remaining on the Transit Funding and Tri-Global Loans because those loans were properly assigned to Plaintiff, Plaintiff is in possession of the original Promissory Notes and Allonges, and all Defendants have failed to pay the amounts due on the loans despite the lapsing of the maturity date on each loan. In response, Defendants do not dispute that the loans are in default and that they are liable under the respective Notes and Guaranties. (Defs.' Resp. to Pl.'s Statement of Facts ¶¶ 12, 46-47, 49-50.) Instead, they argue that Plaintiff may not enforce the loans because (1) the MJPAs underlying Plaintiff's relationship

11

with the Original Lenders are missing certain documents and attachments and (2) some of the Assignment and Transfer documents relating to the Tri-Global Loans were executed in blank and do not include sufficient information to be enforceable.[4] The Court addresses each argument in turn.

I.     **Relevance and Validity of the MJPAs**

Defendants first argue that Plaintiff cannot enforce the loans against Defendants because the MJPAs reference "various attachments and exhibits that are not included in the MJPAs attached to [Plaintiff's] exhibit." (R. 86, Defs.' Resp. 3.) Defendants claim that these missing documents define the relationship between Plaintiff and the Original Lenders and that without them, the MJPAs are invalid and Plaintiff cannot enforce the loans. Plaintiff responds that (1) the MJPAs are legally irrelevant to Plaintiff's loan enforcement efforts because the Notes, Guaranties, Transfer Documents, and Allonges independently give Plaintiff standing to enforce the loans against Defendants and (2) even if the MJPAs are relevant, they are still enforceable without the missing attachments and they give Plaintiff the right to collect the amount owed on the loans.

Here, regardless of the applicability or validity of the MJPAs, Plaintiff may enforce the loans purely on the basis of its possession of the Notes and Allonges granting Plaintiff the right

---

[4] Defendants also argue that Tarik Hussein cannot introduce the relevant Loan Documents and other exhibits because he was not involved in the execution of the loans and reviewed business records. Hussein attested, however, that he was familiar with the events at issue and had reviewed Plaintiff's business records, and thus his affidavit and the exhibits are admissible. *Bayview Loan Servicing, LLC v. Cornejo*, 2015 IL App (3d) 140412, ¶ 19, 39 N.E.3d 68, 74, *appeal denied,* 42 N.E.3d 369 (Ill. 2015) (admitting affidavit of employee of current holder of debt because she was familiar with business process and the records were made in the regular course of business) (citing *Bank of America, N.A. v. Land*, 2013 IL App (5th) 120283, ¶ 14, 992 N.E.2d 1266 (affidavit by an employee of the current holder of the debt was admissible under Rule 236 in a foreclosure proceeding even though some of the business records were created by a prior entity)).

to enforce the loans and guaranties against Defendants. Under Illinois law and the Uniform Commercial Code ("UCC"), "the use of an allonge for indorsement of an instrument is effective when it is affixed to the instrument." *Bank of New York Mellon v. Fleming*, No. 11 C 3573, 2013 WL 241153, at *2 (N.D. Ill. Jan. 18, 2013) (citing *Berg v. eHome Credit Corp.,* No. 08 C 5530, 2011 WL 761486, at *3 (N.D. Ill. Feb. 25, 2011); *Olive Portfolio Alpha, LLC v. 116 W. Hubbard St., LLC*, 75 N.E.3d 381, 385 n. 1 (Ill. App. 4th Dist. 2017) (explaining that "a paper affixed to the instrument is part of the instrument." and that "the allonge is valid even if space is available on the instrument.") (citing Black's Law Dictionary (10th ed. 2014) and UCC § 3-204(a)); *see also* Ill. Comp. Stat. 5/l–103(b) (West 2010). Here, Plaintiff's corporate representative asserted, under oath, that Plaintiff and the Original Lenders executed allonges indorsing Defendants' loans and promissory notes to Plaintiff and that those allonges were firmly affixed to the notes corresponding to Defendants' respective loans. (R. 66, First Hussein Aff. ¶¶ 24, 32.) Defendants do not dispute the content of Plaintiff's affidavit. Plaintiff also attached copies of the allonges, signed by Transit Funding and Tri-Global executives, indorsing both the Tri-Global and Transit Funding Loans and Notes to Plaintiff. (R. 66-67, Exs. 2-13, 54-73.)

As several courts in this District and in Illinois have held, Plaintiff's affidavit along with the attached allonges and notes, sufficiently establish that Plaintiff has a right to enforce the loans against Defendants. *See, e.g.*, *Fleming*, WL 241153, at *2-3 (finding that holder of note and allonge affixed to note could enforce the note against debtor); *Berg*, WL 761486, at *3 (finding that holder sufficiently established possession of the subject note and two allonges affixed to the note where an affidavit stated that "the original note and allonges were physically attached to each other" and finding that holder had right to enforce note); *Olive Portfolio*, 75 N.E.3d at 392-96 (upholding lower court decision to enforce note indorsed to holder by

13

allonges); *Parkway Bank & Trust Co. v. Korzen*, 2013 2 N.E.3d 1052, 1066 (Ill. App. 1st Dist. 2013) (noting that the "mere fact that a copy of the note is attached to the complaint is itself *prima facie* evidence that the plaintiff owns the note.").

Here, Defendants do not dispute that they executed the various loans and guaranties with Transit Funding and Tri-Global nor do they dispute that they are in default on those loans and guaranties. Defendants also do not dispute that Plaintiff has attached to its Complaint notes and allonges assigning Tri-Global and Transit Funding's interest in those loans to Plaintiff. As demonstrated by the cases cited above, these notes and allonges are sufficient to establish that Plaintiff has the right to enforce the loans against Defendants. Defendants' arguments regarding the MJPAs and the documents that are allegedly missing from the MJPAs are thus not relevant, and even if the MJPAs were relevant to Plaintiff's claim against Defendants, Defendants would not have standing to enforce the terms of the MJPAs because they were not a party to those agreements. *See Fleming*, No. WL 241153, at *2 (rejecting borrowers' attempts to argue that assignments were invalid because "borrowers lacked standing to dispute the validity of the assignments because they were not parties to those contracts"); *Williams v. Ameriquest Mortg. Co.*, No. 14 CV 0401, 2014 WL 3687729, at *2-3 (N.D. Ill. July 24, 2014) (finding that borrower did not have standing to enforce terms of the transfer agreement transferring his loan); *Bank of Am. Nat'l Ass'n v. Bassman FBT, L.L.C.*, 981 N.E.2d 1, 7 (Ill. App. Ct. 2012) ("[T]he prevailing rule is that, barring third-party beneficiary status, a litigant lacks standing to attack an assignment to which he or she is not a party.").

Accordingly, the MJPAs are not relevant to Plaintiff's right to enforce the loans, and Plaintiff has sufficiently established, through its uncontested affidavit and the attached notes and allonges, that it may enforce the loans against Defendants.

## II. Validity of the Assignment and Transfer Documents

Defendants next challenge Plaintiff's ability to enforce the loans against Defendants because the Assignment and Transfer documents relating to the Tri-Global Loans were executed in blank and do not include sufficient information to be enforceable. Plaintiff first notes that the Assignment and Transfer documents related to the Transit Funding Loans were not executed in blank, and thus Plaintiff's argument does not apply to those loans. Plaintiff is correct, Defendant's argument is not applicable to the Transit Funding Loans.

Plaintiff also argues, with respect to the Tri-Global Assignment and Transfer documents that (1) Defendants, as non-parties to the Assignment and Transfers assigning their respective loans to Plaintiff, do not have standing to attack those assignments; (2) the Assignments and Transfers are sufficiently identifiable because Plaintiff has maintained them with all the documents it received from the Original Lenders consistent with Plaintiff's regular business practices; and (3) the Participation Schedule, which was attached to the Tri-Global Transfer Documents, identifies each loan and thus the Transfer Documents read as a whole sufficiently identify which Assignment and Transfer documents related to each loan.

As an initial matter, and as discussed above in relation to the MJPAs, Defendants do not have standing to challenge the validity of the Assignment and Transfer documents because they were not parties to those assignments. Borrowers do not have standing to contest the validity of documents assigning their loans because they are not parties to those contracts. *See, e.g.*, *Fleming*, No. WL 241153, at *2 (rejecting borrowers' attempts to argue that assignments were invalid because "borrowers lacked standing to dispute the validity of the assignments because they were not parties to those contracts"); *Bassman*, 981 N.E.2d at 7 ("[T]he prevailing rule is that, barring third-party beneficiary status, a litigant lacks standing to attack an assignment to

15

which he or she is not a party."). A borrower may, however, challenge an assignment if the basis for the borrower's challenge would "render [the assignment] void. *Elesh v. Ocwen Loan Servicing, LLC*, No. 12 C 10356, 2013 WL 1707934, at *1 (N.D. Ill. Apr. 19, 2013) (citing *Bassman*, 981 N.E.2d at 7). Accordingly, Defendants only have standing to challenge the assignment if the defect Defendants identify in the assignment—here, that the Assignment documents were enforced in blank and allegedly contain insufficient identifying information— would render it void. For the reasons discussed below, however, the fact that the Assignment and Transfer documents were executed in blank and do not identify the borrower does not render the Assignment void.

Here, the blank line in the Assignment and Transfer documents does not render the assignment void because Tri-Global and Plaintiff effectuated the assignment of Defendants' loans through multiple documents, including not only the Assignment and Transfer documents, but also the Participation Schedule. (Tri Global MJPA § 2; Hussein Reply Aff. ¶ 4, Exs. 1-32.) Under Illinois law, documents "executed together as part of a transaction or agreement [] are to be read together and construed as constituting but a single instrument." *Geneva Int'l Corp. v. Petrof, Spol, S.R.O.*, 608 F. Supp. 2d 993, 1000 (N.D. Ill. 2009) (citing *IFC Credit Corp. v. Burton Industries, Inc.,* 536 F.3d 610, 614–615 (7th Cir. 2008). "Construing contemporaneous instruments together means simply that if there are any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect." *Id.* The Participation Schedule associated with each Tri-Global Assignment and Transfer document clearly identifies the name of the original loan borrower and provides identifying information about the loan. (*See* Hussein Reply Aff. ¶ 4, Exs. 1-32.) The Participation Schedule and the

16

Assignment and Transfer Documents thus collectively contain sufficient identifying information about the original borrower and the assigned loan to render the assignment valid.

Accordingly, Defendants do not have standing to contest the validity of the Tri-Global Assignment and Transfer documents, and even if they did, the blank line in the Tri-Global Assignment and Transfer documents does not render Tri-Global's assignment of the Tri-Global Loans and Guaranties to Plaintiff void.

**CONCLUSION**

For the foregoing reasons, the Court grants Plaintiff's motion for summary judgment and finds that Defendants are in default and are jointly and severally liable to Plaintiff for the unpaid amounts remaining on the Tri-Global and Transit Funding Loans and Guaranties.

**DATED:** November 2, 2017                                 **ENTERED**

*/s/ Amy J. St. Eve*
AMY J. ST. EVE
United States District Court Judge

17